Good morning. Case No. 15-33724 v. R. Armani Bell. Good morning, Your Honors. Good morning, Counsel. May it please the Court. Lorraine Bowser from the Office of the State Appellate Defender on behalf of Armani Bell. Armani Bell's conviction for unlawful use of a weapon should be vacated because the statutory provision under which she was convicted is facially unconstitutional under the Second Amendment. Specifically, Bell was convicted of the Class III felony version under subsection C. 1.5 of the statute for possessing a firearm in a public park. The Illinois Supreme Court in People v. Shires recently invalidated a related provision. Let me ask you a question about that. You didn't cite that case in your original brief, did you? Are you talking about Shires? Yes. It came down after the original. You cited it in your reply brief. I did note in the opening brief that I said a similar issue was pending. Did you file a motion to cite additional authority? It was in my reply brief. Did you file a motion to cite additional authority? I did not. The Supreme Court rule specifically says you cannot cite in a reply brief that which you did not cite in your main brief. I believe the opening brief specifically acknowledged that the identical issue was pending in Shires at the time. But you didn't cite the whole thing in Shires. See, you know, you can fight me all you want. Madam, when you do what you did, file a motion to cite additional authority. It gives your opponent an opportunity to respond to it. The State doesn't have an opportunity to respond to your reply brief. Well, they certainly could file a motion to cite additional authority. It didn't do it by the rules. Don't fight me. I'm not going to correct this problem. In the future, file a motion to cite additional authority. Now you can go ahead. Would you like me to continue? Go ahead. Thank you. I would point out that either the court in Shires validated similar provision, and applying the framework in Shires to the incident case, it leads to the same conclusion. The State in this case has fully failed to meet its burden to present evidence to justify the regulation under the Shires court's sliding scale of heightened scrutiny. The Shires court confirmed that we use a two-step approach to Second Amendment challenges. We first determine if the regulated activity falls within the scope of the Second Amendment, and then if it's not categorically unprotected activity, we apply the appropriate level of scrutiny to the State's justification for the regulation. So the court first looked at the scope of the regulated activity and rejected the notion that the State has argued here that if it's in a sensitive location, it's completely outside the scope of the Second Amendment. The court reviewed its prior decisions and said that the core Second Amendment right is the right to carry for armed self-defense. So it held that even sensitive locations must be subject to some scrutiny. Shires seemed to have rested on the proposition that the State provided no evidentiary support for its claim that prohibiting firearms within 1,000 feet of a public park would reduce the risk it identified. This is a case where it's a prohibition against carrying the weapon inside the park. Correct. Don't you think it's kind of intuitive that we've got more danger of people carrying guns inside parks as opposed to whether there's an increase in danger if they carry guns 1,000 feet from a park? The Shires court specifically said that these sort of propositions must be proven with actual empirical evidence. We can't just speculate as to harm. Are you speculating that it's dangerous to carry guns in a park where there are kids and people walking around? I would argue that Shires says we cannot speculate. No, Shires didn't say that. I'll read it to you. Sure. Based on the record, the State provided no evidentiary support for its claim that prohibiting firearms within 1,000 feet of a public park would reduce the risk it identifies without specific data or other meaningful evidence. We see no direct correlation between the information the State provides and its assertion that a 1,000-foot firearm ban around a public park would protect children. Shires is specifically, specifically addressed only at 1,000 feet from a park. It didn't talk about the park. It didn't talk about any other prohibition. So isn't the park itself different than 1,000 feet from a park? Absolutely. And I'm not saying Shires controls. I'm saying we have to apply the Shires reasoning to the facts of this case. And Shires specifically said when we're dealing with a regulation that bans the core Second Amendment rights to carry firearms in public for self-defense, we apply this heightened scale. So it looked at two things in trying to determine how heavily we apply an immediate scrutiny to the regulation. It first looked at the severity of the law's burden on the right. And it said in that case in Shires it was a complete ban. The entire population of Illinois was prohibited from armed self-defense under that regulation. Counsel, let me ask you a question. Sure. The law says as a challenger to constitutionality of the statute, must establish that no set of circumstances exist under which the act or this provision of the act relative to parks would be valid. So it's your burden to establish that. What in your motion or your argument established that there are no set of circumstances when we look at Heller in the discussion about sensitive places? No set of circumstances is a constitutional because of the testified in Shires that we have to weigh whether the state has met its burden to justify the regulation. Well, but you have to establish there's no set of circumstances. Is that what the case says? Because no law-abiding individual can bring their gun into the park. So there's no set of circumstances in which anyone is not subject to this regulation. Okay. But I'm saying looking at Heller and what they say about their certain sensitive places, government buildings and others, and I guess it was Justice Posner that wrote that, or Judge Posner, we're going to get into this argument. It's going to happen. So there's no burden on you whatsoever? You just come to this conclusion? Well, I believe I do have a burden. I think we've shown the burden by showing that the law prohibits any individual from entering the park with a gun. So I'm sure it burdens the entire population of Illinois. The population of Illinois should be able to carry guns in a park. Well, the terror is something, obviously, for the legislature. But I would point out that since the time of Mr. Bell's actions in this case, the statute has been amended and provides an exception for concealed carry license holders. So the statute has already taken some additional terror into effect. But the version that he was convicted of, again, like the court noted in Chavez, it affects the gun rights of the entire Mar-a-Lago population of Illinois. And they said it's therefore a severe burden on the Second Amendment right to self-defense. Let me ask you this. Sometimes it's good to test a theory by taking it to its extreme. Assuming we had a statute that said it was illegal to carry a firearm in a penal institution, would the state have to prove the incidents and the damage that could be caused by carrying guns into prisons? Or is that just so obvious that they don't have to prove it anymore? Well, I believe we would have to follow the Shadows Framework and apply that sliding scale. So that is a sensitive location. And, again, the Shadows Court said there was two factors on the sliding scale, the severity of the burden, which, again, gives the entire Mar-a-Lago population, and then the breadth of the regulation. So that would fall under the breadth part, where the court does say, although the restriction in the Shadows case wasn't a statewide ban like we had in Aguilar or the Mosley cases, it still covered a vast number of public places in the state of Illinois. And, you know, while the court has recognized that individuals can avoid entering into specific sensitive places, therefore it's slightly less burdensome, it's still noted that, you know, it is covering a large public area in the state. So I think that what you're talking about in a penal institution would be further down the sliding scale as far as the breadth of the law. It affects less people. It's not covering vast areas of the state. So the state would have to present less evidence to meet its burden there. But the state would still have to present evidence. We just say it's so obvious that they don't have to present any evidence at all? I think that under the test set forth in Shadows, that is correct. Any time a second-level challenge is made, we follow this framework, and the state has to present evidence to justify it. Seems to be taking a rule to absurdity to me. Go ahead. Let me ask you, how does the case law get to schools and government buildings? Is that a given? Those are sensitive places, and they can't be infringed upon as far as the Second Amendment is concerned? Is it a given that they're sensitive places? Yeah. I think, again, that would be an argument that falls under the breadth. I think we all instinctively understand them to be sensitive places. But you say we all understand them. Can't we all understand a park to be a sensitive place? I think it is a sensitive place. The question is how much does the state have to present to justify a regulation less when it's a sensitive place than when it's just kind of a carriage? You're talking about schools and government buildings where the state had to show they were sensitive places and what their burden was. I don't think any post-Charles cases have addressed this yet. Any cases? Any cases. Any cases addressing it? I'm sorry. Where the state had to prove their burden and schools and government buildings were sensitive places. I'm not sure that we've had a case yet that's addressed that. You're asking us to establish that. I think one of the first cases that has addressed this issue after Charles. Even outside of Illinois. Federal cases. The whole school, government, building thing. What was the burden of government? So there aren't any. No, I'm not sure at the top of my head out of Illinois cases that have addressed this and how they've addressed this. Outside of the federal cases, though, more and a number of other things. But there's none that you can give me right now that say it's the state's firm duty to make this, to establish that this is a sensitive place. Second Amendment to the Constitution. That's the Second Amendment to the United States Constitution, isn't it? Correct. What did the United States Supreme Court say in District of Columbia versus Heller as to sensitive places, schools, and governmental buildings? It said, of course, that this doesn't cast a doubt on those kind of regulations. Yes. So there's no doubt that prohibiting the carrying of firearms in schools and governmental buildings comports with the Second Amendment, according to the United States Constitution, the Supreme Court. Is that correct? I don't think that's correct. In fact, I think it identified those as sensitive places that can be regulated. Shire specifically said, even presumptively— Our ruling should not cast doubt on longstanding prohibitions on the possession of firearms by felons and mentally ill or laws forbidding the carrying of firearms in sensitive places such as schools and governmental buildings. You don't read that to be a suggestion by the Supreme Court that prohibitions against carrying in schools and governmental buildings comports with the Second Amendment? I have to read it, obviously, in conjunction with what Shire has said, which is that even presumptively lawful regulations under Heller have to be given some level of scrutiny. So when we're talking about an interpretation of the Second Amendment to the United States Constitution, we should follow the Illinois Supreme Court's analysis as opposed to the United States Supreme Court's analysis? Is that the argument? Well, I don't think that that's what I'm arguing at all. I think that Shire has talked about how we apply that analysis or how we apply what the Supreme Court said in Heller. Let me ask you something that's really more basic. I think you agreed that a park is a sensitive place, right? Right. So I think we've also established that sensitive places are prohibiting the carrying of guns in sensitive places comports with the Second Amendment. Why are you saying a park is different? I didn't quite get that. You answered Justice Connors' question, but I didn't get your answer. Can you do it again? Why? I think you can't. Why are you having a carve-out for parks if you agree that a park is a sensitive place? I mean, that's what Shire says we have to do. All that the sensitive nature of the location does is move it. Shire doesn't say that at all. That is not what Shire says. Well, I guess I don't understand, you know, why we always don't think that when Shire is just talking about the size and scale, why we wouldn't have to apply that to this regulation. If a park is a sensitive place, if a school and a government building is a sensitive place and they're all in the same category, I'm trying to get an understanding of why you think a park should be different from the school and the government buildings in terms of applying the principle, and that's what I'm missing. I'm not... I think in applying the sliding scale, you know, the specific locations noted in how a government building and schools are, you know, fundamentally different from a park. It's a sensitive location, but it much more resembles the public way than it does, you know, entering a building, entering a school. So, you know, the Shire's quote said this is a sliding scale. It's not fixed. It's not static. So we do have to consider these things in applying wet level scrutiny to the state and deciding what level of intermediate scrutiny we apply to a regulation. Didn't the Supreme Court really rely a lot in Shire's about the fact that it was such a troubling aspect of that case that no one knows what 1,000 feet from a park is? Yes. It's designated, you know. And I think that moves this, again, lower on a scale. So I think the state wouldn't have to present as much evidence or as close a fit. But here it's presented no evidence about parks. Would the state have to present evidence for prohibition against carrying firearms in a school? Yes. The Supreme Court of the United States says they don't have to. They said there's nothing wrong with these prohibitions possessing firearms in a school. They said it in Heller. Other governmental buildings. And it occurs to me that the only thing that Heller does is recognize the fact that there are some locations that are so sensitive that the state doesn't have to prove anything. They can prohibit it. We'll give you some time to rebuttal. Thank you. Thank you. May it please the Court, Counsel, Matthew Connors, Assistant State's Attorney on behalf of the people of the State of Illinois. We are not related. No relation, Your Honor. Thank you. Less common spelling. As this Court has touched upon, the key issue here is whether or not, as a sensitive place, defendants' possession of a firearm is subject to the level of scrutiny referred to by counsel to justify finding it unconstitutional per counsel's request. This Court picked up on the inherent tension in the charge's decision, which starts in paragraph 15 where they say all statutes are presumed constitutional. And that's something this Court has handled in all sorts of facial challenge, which this is. And then there's this sliding burden referred to by counsel found at 28 and 29 of, I mean, starting in 54, where they talk about a sliding scale based upon the severe intrusion on the Second Amendment right. Again, this is a bifurcated test, first rather than pinches on a core principle of the Second Amendment. It's worth noting that in Chavez, although the Court went on to expand on this definition, it cited a decision by the Fourth Circuit, that's at paragraph 29 of Chavez, United States v. Maceo and Darrow. And pursuant to Justice Connors' question, this is actually a discussion of whether or not the Federal Second Amendment right, you can have a total ban within a public park. In that case, the Court said that the Federal prohibition against carrying, quote, or possessing a loaded weapon in a motor vehicle within a national park did not violate the Second Amendment. People's position of that citation in the charge's decision demonstrates that this is a sensitive location and the Court's analysis can stop there. Is it your proposition that once you establish that the prohibited location is a sensitive location, you need not produce any further evidence of the harm that could be caused by the carrying of a weapon in that location? Correct, Your Honor. That's the implication of the footnote that this Court commented on in the header and also the first purpose of the bifurcated question. It says we will go further to consider the scope of the regulation. Now, the child's court did say we agree with other decisions where we would go further to analyze. So it didn't stop the analysis at that point, but it's the people's position that by citing Mash and Darrow at page 29 before it proceeded further, this Court can comfortably rely upon that as a notion that possession of a firearm within the confines of a public park is a sensitive location and the analysis can stop there. However, if this Court were to proceed further, then we do have a conversation about, well, what is that burden? Is it on the State? Is it on the defendant? And, again, there's some sort of tension because the requirement that the State put forth some sort of evidence actually stems from E-01 cited by the Court, 651 F. Ford 684. And in that case, we talk about injunctive relief. This was injunctive relief where there was actually testimony about the City of Chicago Fire Range Ban. And in that case, the City of Chicago actually put forth live witnesses to discuss the impact, the logic, and why this ban was brought about. It makes sense that for a review in court, they would look at that testimony and say, we find that testimony or we find that evidence lacking. In this case, the allegation is being raised for the first time on appeal based upon this childless decision. So there wasn't an occasion to elicit that information prior. Again, the defendant was convicted. It's presented off of the defendant's conviction. And it is for the first time that the allegation is being made that somehow the people were supposed to have introduced proof regarding the nature of that conviction. And while the earlier Supreme Court in childless seems to applaud that EISA language, it's not clear that in a case like this where the evidence is brought up for the first time on appeal, that that really is an apt fit. Instead, it's the people's position that as with any other facial challenge, it is a demonstrable case that the Constitution must be, that the legislation must be presumed to be constitutional. Counsel, let me ask you this question. Yes. This was first brought up in a motion to dismiss, was it not? Yes. What I'm concerned about is what's the procedure then? Is the State supposed to take the burden? The burden's on the one who's saying the statute is unconstitutional, but then the burden shifts somehow to the State to come up with evidence? How does that work? Well, that's precisely what happened in the childless decision. The circuit court in, I believe it was King County, were dismissed at that point in time. And the Supreme Court said, based upon that information, it bypassed the appellate court, went directly to the Supreme Court, and there was briefing with some reference in the Supreme Court briefs to statistical analysis. The people have some of those same citations in their brief here. But it does kind of, for lack of a better phrase, short circuit the evidentiary process of doing that. And, again, that's something the Supreme Court has put out, and unfortunately it falls upon this Court to try to make sense out of how to weigh those two concerns, the evidentiary need or the constitutional basis. It occurs to me that your theory is once there is a finding that the location is sensitive, there no longer is any requirement to present statistical information to support the ban. But once, if there is a finding that it's not a sensitive location, and in that particular case you have some form of a burden to come forward with some information, a statistical basis to support your notion that the ban is necessary. That is a reading, Charles, but I will refer this Court back to the Mastandar decision. Excuse me. Yes, sir. Is that your position? That's what Justice Hoffman asked, and I was going to ask you that question. Is that your position, yes or no? To the extent that there is a requirement to prove some basis, yes, Your Honor. It's not people's position that there has to necessarily be the statistical or legal journal-based analysis that was utilized in the Chair's decision. And the reason why is because the Mastandar decision, they specifically said in that case without the additional information, we conclude that the government has a substantial interest in providing for the safety of individuals who visit and make use of national parks. And although the government's interest need not be, quote, compelling under intermediate scrutiny, cases have sometimes described the government interest in public safety in that fashion. So you have a statement that protecting people in the public parks is of a sufficient and compelling interest that would justify at least the decision in Mastandar that the Charles Court decided. So it does follow that there would be some sort of necessity, but again, if we're talking at the appellate level, we can't present a witness at this point in time to say it is the State's legislative purpose to protect people in the public park. We can draw upon case law which says the State has a vested interest in keeping children safe. Mr. Berrios, Counsel, you did provide a response to the motion to dismiss and make some argument there. Yes. You did not. Yes. You didn't have Chavez deal with that. Correct. Yes. It does bear note that in this case, it must be noted that the defendant's possession of the firearm was at 545 on Wednesday. So this is something exactly the situation we're talking about. School is out at that point in time. People are in the park. Defendant slipped and fell, tried to run into a basketball park in Washington. This is a facial challenge. Yes. It's not an applied challenge. What actually happened with this defendant or didn't happen with this defendant other than the carrying of a weapon in the park is wholly irrelevant to the issue that's presented. It's irrelevant, but it's illustrative. Well, it's not illustrative. It's a single person that fell down with a gun. The question is whether the total ban, the total ban within the park, infringes on a Second Amendment right. It's a facial challenge. So that's yes or no from a legal standpoint. It's not a factual issue. And it's the people's position that because it is a sensitive location, this Court can confidently say that that registration, that that regulation is in fact constitutionally permissible. Fair. That's fair. If there are no further questions, and if all these reasons have been stated in the people's brief, we ask that this Court firm the defendant's conviction and find the statute constitutional. Thank you. We're adjourned. Thank you. I would just like to briefly respond to this notion that if it's a sensitive place, we don't have to conduct any scrutiny. And the State just cited Nassar and Dyer for that proposition. But Nassar and Dyer actually acknowledged that there's some ambiguity about what the sensitive places means and then concluded that we don't have to resolve that because we conclude that the State has met its burden under intermediate scrutiny. So it did still move to intermediate scrutiny, despite finding that the public park was a sensitive place. And the State, in its brief, argued that it only had an intermediate scrutiny to, you know, justify this regulation. And then, in its brief, provided numerous statistics about school shootings, juveniles carrying guns, and things of that nature. Nothing about parks, but it did provide evidence to justify the regulation. So I think this notion that you don't have to justify the regulation when it's in a public park isn't supported by Shirez or Nassar and Dyer case that the State just discussed or its own briefing of the case. So I do think we have to apply this element of heightened scrutiny under the test of Shirez. Thank you. Ladies and gentlemen, the matter will be taken under advisement. Decision will be issued in the courts. Thank you. Court's adjourned.